FILED

2025 Mar-03  AM 11:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SCOTT NORRIS HAMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-01386-NAD |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING THE DECISION OF THE COMMISSIONER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Scott Norris Hames appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") on his claim for disability benefits. Doc. 1. Plaintiff Hames applied for benefits with an alleged onset date of November 26, 2018. Doc. 7-9 at 4–16; Doc. 7-4 at 24–25. The Commissioner denied Hames's claim for benefits. Doc. 7-3 at 2–6, 21–38. In this appeal, the parties consented to magistrate judge jurisdiction. Doc. 9; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

After careful consideration of the parties' submissions, the relevant law, and the record as a whole, the court **REVERSES** and **REMANDS** the Commissioner's decision.

1

## ISSUE FOR REVIEW

In this appeal, Hames argues that the mental residual functional capacity (RFC) found by the Administrative Law Judge (ALJ) "is not supported by substantial evidence because the ALJ failed to account for Plaintiff's moderate limitation in maintaining concentration, persistence, and pace." Doc. 12 at 3, 10.

## STATUTORY AND REGULATORY FRAMEWORK

A claimant applying for Social Security benefits bears the burden of proving disability. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Social Security Administration (SSA) reviews an application for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council.

*See* 20 C.F.R. § 404.900(a)(1)–(4).

When a claim for disability benefits reaches an ALJ as part of the administrative process, the ALJ follows a five-step sequential analysis to determine whether the claimant is disabled. The ALJ must determine the following:

(1) whether the claimant is engaged in substantial gainful activity;

(2) if not, whether the claimant has a severe impairment or combination of impairments;

(3) if so, whether that impairment or combination of impairments meets or equals any "Listing of Impairments" in the Social Security regulations;

(4) if not, whether the claimant can perform his past relevant work in light of his "residual functional capacity" or "RFC"; and,

(5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Winschel v. Commissioner of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The Social Security regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211. At step five of the inquiry, the burden temporarily shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Washington v. Commissioner of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). If the

Commissioner makes that showing, the burden then shifts back to the claimant to show that he cannot perform those jobs. *Id.* So, while the burden temporarily shifts to the Commissioner at step five, the overall burden of proving disability always remains on the claimant. *Id.*

## STANDARD OF REVIEW

The federal courts have only a limited role in reviewing a plaintiff's claim under the Social Security Act. The court reviews the Commissioner's decision to determine whether "it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

A.    With respect to fact issues, pursuant to 42 U.S.C. § 405(g), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

In evaluating whether substantial evidence supports the Commissioner's decision, a district court may not "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted); *see Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (similar). If the ALJ's decision is supported by substantial

4

evidence, the court must affirm, "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford*, 363 F.3d at 1158 (quoting *Martin*, 894 F.2d at 1529).

But "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden*, 672 F.2d at 838 (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)); *see Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "The ALJ must rely on the full range of evidence . . . , rather than cherry picking records from single days or treatments to support a conclusion." *Cabrera v. Commissioner of Soc. Sec.*, No. 22-13053, 2023 WL 5768387, at *8 (11th Cir. Sept. 7, 2023).

B.    With respect to legal issues, "[n]o . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. And the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## BACKGROUND

**A.    Hames's personal and medical history**

Hames was born on September 22, 1983.   Doc. 7-4 at 24; Doc. 7-9 at 4.
Hames previously worked as a bartender.  Doc. 7-10 at 5.

In November 2018, Hames was in a car accident that required hospitalization
and caused a neck fracture and a traumatic brain injury (TBI); the accident had long-
term effects including pain requiring medication. *See, e.g.*, Doc. 7-12 at 4–6, 9–10,
15–52, 55–71; Doc. 7-13 at 2–192; Doc. 7-14 at 2–26; Doc. 7-16 at 18–25.

On February 11, 2019, Hames went to a primary care provider, Dr. Stephen
Russell, to establish care.  Doc. 7-12 at 9.  Dr. Russell noted that Hames had been
diagnosed with anxiety and ADHD in high school and prescribed him medication
for depression and anxiety.  Doc. 7-12 at 9–10.

On February 27, 2019, Hames filled out an adult function report.  Doc. 7-10
at 25–35.  In his function report, Hames stated that he had trouble completing tasks.
Doc. 7-10 at 33.  Hames's function report focused mostly on his physical limitations
arising from his car accident and resulting injuries.  Doc. 7-10 at 25–35.

On March 3, 2020, Hames saw a primary care provider to establish care and
reported "mental instability associated with head trauma" with depression and
possible PTSD.  Doc. 7-15 at 27.  He was taking a previously prescribed
antidepressant, but he was not sure of its effectiveness.  Doc. 7-15 at 27.

On June 17, 2020, Hames had a behavioral health visit, and reported that he had ADD and was experiencing "extreme depression." Doc. 7-15 at 25. He reported that his "brain is a scrambled nightmare." Doc. 7-15 at 25.

Beginning on November 6, 2020, Hames began having regular appointments at Cooper Green Mercy Health Services Authority, at which he consistently reported depression and anxiety and expressed discontent or doubts about the efficacy of medication. Doc. 7-15 at 2–5, 13, 21; Doc. 7-17 at 2–6, 15–22, 29–30; Doc. 7-18 at 2, 27, 38–39; Doc. 7-20 at 9–14; Doc. 7-21 at 2–3. At multiple appointments, Hames reported difficulty with concentration and motivation and with completing the tasks of daily living. Doc. 7-15 at 2; Doc. 7-17 at 21–22, 29–30; Doc. 7-18 at 10, 27, 38–39; Doc. 7-21 at 3.

On November 29, 2022, Karen Marks, a licensed clinical social worker who had treated Hames, filled out a medical source statement regarding Hames's mental ability to do work-related activities. Doc. 7-19 at 6–8. Marks opined that Hames had no limitations in understanding and remembering simple instructions, had mild limitations in carrying out simple instructions, and had moderate limitations in making judgments on simple work-related decisions, understanding and remembering complex instructions, carrying out complex instructions, and making judgments on complex work-related decisions. Doc. 7-19 at 6. Marks noted that Hames had "difficulty remaining on topic." Doc. 7-19 at 6.

**B.    Social Security proceedings**

**1.    Initial application and denial of benefits**

On December 10, 2018, Hames applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) based on injuries he sustained in his 2018 car accident, with an alleged onset date of November 26, 2018. Doc. 7-9 at 4–16; Doc. 7-4 at 24–25.

On March 6, 2019, Hames's applications for benefits were denied at the initial level based on a finding that Hames was not disabled because he could perform work at a light level. Doc. 7-4 at 2–25; Doc. 7-5 at 4–8. Mental health consultative examiner Dr. Robert Estock opined that Hames's mental health impairments were not severe, and that he had "mild" limitations in concentrating, persisting, or maintaining pace. Doc. 7-4 at 6, 17.

On April 12, 2019, Hames requested a hearing before an ALJ. Doc. 7-5 at 9. On February 11, 2020, an initial hearing before an ALJ was held, but was continued so that Hames could attempt to obtain counsel. Doc. 7-3 at 70–80. A second hearing, which included counsel for Hames, was held on December 15, 2022. Doc. 7-3 at 44–46.

On January 24, 2023, the ALJ entered an unfavorable decision. Doc. 7-3 at 21–38.

### 2.    ALJ hearing

On December 15, 2022, the ALJ held an in-person hearing on Hames's applications for disability benefits.  Doc. 7-3 at 44–46.

Hames's counsel stated that the theory of disability was that Hames had "a combination of impairments, both mental and physical, that reduce [his] mental [and] physical residual functional capacity to the low sedentary."  Doc. 7-3 at 49. Hames testified that he was 39 years old and had worked as a bartender for 15 years until November 2018.  Doc. 7-3 at 49.  Hames testified that he then had a cervical fracture, which did not require an operation, but which did require him to wear a neck brace and to take pain medication.  Doc. 7-3 at 50.  Hames testified that he went to the doctor for follow-up appointments about every two weeks, specifically to the "psychologist, psychiatrist," and testified that he also was "trying to run through all the doctors that I can for my neck and back."  Doc. 7-3 at 50.  He testified that he was on Seroquel, Lamotrigine, and Prozac for his anxiety and depression, and that he had been on Prozac for the longest at about six months to a year.  Doc. 7-3 at 51.  He testified that he had been on medication for ADD as a child, but that he was not on any medication for ADD at the time of the hearing.  Doc. 7-3 at 51. He testified that his medication had side effects like making him feel "punch drunk."  Doc. 7-3 at 51.

Hames testified that he spent most of his time in bed due to pain and anxiety

that "makes [him] want to hide," and that he was not on any medication for anxiety while he was working as a bartender before his car accident. Doc. 7-3 at 52. Hames testified that he did not socialize except to see his girlfriend. Doc. 7-3 at 54. Hames testified that his anxiety and depression affected his concentration such that he could only concentrate for 30 minutes to an hour and does not "retain anything." Doc. 7-3 at 56–57. Hames testified that he was not able to finish things he started because he gets "lost" and tends to "space out," thinking about "everything that [he] possibly could outside of the task." Doc. 7-3 at 57. He testified that he could not tell if his medications helped at all, though he had "been told that people can tell a change . . . for the better." Doc. 7-3 at 57. Hames testified that before his car accident he had more hobbies and did more activities, including video games, but he no longer had "the patience or the focus" to do those activities. Doc. 7-3 at 59.

Vocational Expert (VE) Jamie Cooper then appeared to provide vocational testimony. The ALJ asked VE Cooper to opine on the vocational potential at both a light and sedentary level for a hypothetical individual who could frequently climb ramps and stairs, stoop, kneel, and crouch, could only occasionally crawl, should never climb ladders, ropes, or scaffolds, could frequently reach overhead with the bilateral upper extremities, could frequently handle and finger with the bilateral upper extremities, could have occasional exposure to extremes of cold and full body vibration, and should have no exposure to hazards such as unprotected heights or

10

machinery. Doc. 7-3 at 64. VE Cooper opined that such an individual could not perform Hames's past relevant work as a bartender. Doc. 7-3 at 64. VE Cooper testified that the hypothetical individual whom the ALJ described could perform jobs existing in significant numbers in the national economy, including cafeteria attendant, folder, and sorter at the light level, and document preparer and sorter at the sedentary level. Doc. 7-3 at 64–66.

The ALJ then asked, "If an individual at either the sedentary or the light exertional level would only be able to understand, remember and carry out simple instructions and tasks, the person could tolerate changes in the workplace that are infrequent and gradually introduced and this individual could have occasionally work-related interaction with supervisors, coworkers, and the general public, would the jobs of cafeteria attendant, folder, sorter, document preparer and sorter at the sedentary exertional level still be available?" Doc. 7-3 at 66. VE Cooper said yes. Doc. 7-3 at 66–67. The ALJ asked if the jobs would still be available if the hypothetical individual were to miss work more than two days per month on a regular basis, and VE Cooper said no. Doc. 7-3 at 67.

Hames's counsel asked VE Cooper if it would eliminate the available jobs for the hypothetical individual if the individual "had an inability to maintain concentration, persistence and pace for two hours." Doc. 7-3 at 68. VE Cooper testified that those restrictions would eliminate the available jobs. Doc. 7-3 at 68.

11

### 3.    ALJ decision

On January 24, 2023, the ALJ entered an unfavorable decision.  Doc. 7-3 at 21–38.  In the decision, the ALJ found that Hames met the requirements for insured status through June 30, 2022.  Doc. 7-3 at 25.  "After careful consideration of all the evidence," the ALJ concluded that Hames "has not been under a disability within the meaning of the Social Security Act from November 26, 2018, through the date of this decision."  Doc. 7-3 at 25.

The ALJ applied the five-part sequential test for disability.  Doc. 7-3 at 25–26; *see* 20 C.F.R. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Winschel*, 631 F.3d at 1178. The ALJ found that Hames was insured through June 30, 2022, and that he had not engaged in substantial gainful activity since his alleged onset date of November 26, 2018.  Doc. 7-3 at 26–27.  The ALJ found that Hames had severe impairments of "status post cervical and thoracic spine fractures and type II odontoid fracture; degenerative disc disease of the cervical spine; status post traumatic brain injury (TBI); depressive disorder/schizoaffective disorder; anxiety disorder; and attention deficit/hyperactivity disorder (ADHD)."  Doc. 7-3 at 27.  The ALJ found that Hames had non-severe impairments of "psoriasis/eczema, Chiari malformation, and astigmatism."  Doc. 7-3 at 27.

The ALJ found that Hames did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments

listed in the applicable Social Security regulations. Doc. 7-3 at 27–28. In determining whether Hames had an impairment or combination of impairments that met or equaled the listings, the ALJ found that Hames had a mild limitation in understanding, remembering, or applying information. Doc. 7-3 at 28. The ALJ also found that Hames had a moderate limitation in interacting with others. Doc. 7-3 at 28.

Importantly, the ALJ found that Hames had a moderate limitation in concentrating, persisting, or maintaining pace. Doc. 7-3 at 29. The ALJ explained that Hames in his function report did not express difficulty with concentration or finishing what he starts, but that he did testify at his hearing about difficulty in those domains. Doc. 7-3 at 29. The ALJ noted that, "[w]hile the record documents the claimant has endorsed difficulty with concentration, there is no objective documentation of difficulty with attention or concentration outside of his initial hospitalization following the motor vehicle accident. The claimant's therapist indicated the claimant would have mild impairment carry[ing] out simple instructions and moderate impairment carrying out complex instructions." Doc. 7-3 at 29. The ALJ found further that Hames had a moderate limitation regarding adapting or managing himself. Doc. 7-3 at 29.

The ALJ found that, because Hames did not have at least two "marked" mental health limitations or one "extreme" mental health limitation, his mental impairments

did not meet or equal the severity of the listings.  Doc. 7-3 at 29.

The ALJ then stated that his assessment of Hames's limitations in the listing context was "not a residual functional capacity assessment," but was "used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning."  Doc. 7-3 at 29.  The ALJ stated that "[t]he following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis."  Doc. 7-3 at 29.

The ALJ proceeded to determine Hames's RFC (or residual functional capacity), finding "after careful consideration of the entire record" that Hames could "perform light work," except that he could frequently climb ramps and stairs, stoop, kneel, and crouch, can occasionally crawl, should never climb ladders, ropes, or scaffolds, can frequently reach overhead with his bilateral upper extremities, can frequently handle and finger with his bilateral upper extremities, could have only occasional exposure to extremes of cold as well as full body vibration, should have no exposure to hazards such as unprotected heights and hazardous machinery, "would be able to understand, remember and carry out simple instructions and tasks," could "tolerate changes in the workplace that are infrequent and gradually introduced," and could "have occasional work-related interaction with supervisors,

coworkers and the general public." Doc. 7-3 at 30.

The ALJ stated that the ALJ had considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Doc. 7-3 at 30. The ALJ also stated that the ALJ had considered any medical opinions and prior administrative medical findings. Doc. 7-3 at 30. In assessing Hames's RFC and the extent to which his symptoms limited his function, the ALJ stated that the ALJ "must follow" the required "two-step process" for assessing subjective testimony. Doc. 7-3 at 30.

In determining Hames's RFC, the ALJ summarized Hames's hearing testimony, including his testimony that he saw mental health providers every two weeks for mental health and was prescribed three different medications, though he was not on medication for ADHD. Doc. 7-3 at 30. The ALJ stated that Hames testified that he stayed in bed "and tries to hide" during the day and that he spent time with his girlfriend but had no other social activities. Doc. 7-3 at 30. The ALJ stated that Hames testified that he could not do any type of job "because he cannot be relied upon" and reported difficulty with concentration and finishing what he starts because he has anxiety, cannot retain anything, and gets "spaced out." Doc. 7-3 at 31. The ALJ also summarized Hames's adult function report and the physical limitations that Hames reported. Doc. 7-3 at 31.

The ALJ found that Hames's medically determinable impairments could

reasonably be expected to cause some symptoms and/or functional limitations, but that his statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the objective evidence, as the record "generally does not support the alleged loss of functioning." Doc. 7-3 at 31. The ALJ stated that, "[a]ccordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence. The claimant's actual capabilities are stated in the residual functional capacity assessment." Doc. 7-3 at 31.

The ALJ then provided an in-depth summary of Hames's medical history, including medical evidence of his physical symptoms following his car accident in 2018 that resulted in a neck injury and a traumatic brain injury. Doc. 7-3 at 31–34. The ALJ also summarized Hames's medical records regarding his alleged mental impairments. Doc. 7-3 at 32–34. The ALJ noted that, when Hames established with a primary care provider in March 2020, his primary complaint appeared to be mental health. Doc. 7-3 at 32. The ALJ summarized a neurological appointment in November 2021 after his traumatic brain injury in the car accident, at which Hames reported experiencing depression, anxiety, and post traumatic stress disorder. Doc. 7-3 at 33. The ALJ stated that, at a follow-up in May 2022, Hames still complained of anxiety and depression. Doc. 7-3 at 33.

The ALJ stated that Hames had been diagnosed with ADHD in high school

and was prescribed medication for psychological symptoms by a primary care provider, but did not establish care with a psychiatric provider on a consistent basis until December 2021, when he reported that he had difficulty with motivation and concentration and issues with body image. Doc. 7-3 at 33. The ALJ stated that Hames "endorsed symptoms consistent with severe depression upon screening"; and the ALJ summarized Hames's records, including that he was cooperative but irritable and had logical thought process and normal cognition, insight, intelligence, and judgment. Doc. 7-3 at 33. The ALJ stated that Hames was diagnosed with major depressive disorder as a differential diagnosis, as he also exhibited symptoms of anxiety and ADHD, and his medication was changed and he was directed to start individual therapy. Doc. 7-3 at 33.

The ALJ stated that Hames's medication management was transferred to another provider in March 2022, and Hames reported worsening symptoms and that his medication was ineffective. Doc. 7-3 at 34. The ALJ stated that, at appointments throughout 2022, Hames reported depression and anxious mood, but otherwise had generally normal mental status. Doc. 7-3 at 34. The ALJ noted that, in November 2022, Hames reported tactile hallucinations. Doc. 7-3 at 33.

The ALJ then restated the finding of Hames's physical RFC, as the ALJ determined to be supported by the record. Doc. 7-3 at 34.

The ALJ stated further that, "[i]n addition, the claimant's alleged mental

17

impairment related to his TBI in combination with his severe medically determinable mental impairments reasonably result in limitation to understanding, remember[ing], and carrying [out] simple instructions and tasks; he could tolerate changes in the workplace that are infrequent and gradually introduced; he can have occasional work-related interaction with supervisor, coworkers, and the general public." Doc. 7-3 at 34.

The ALJ then assessed the persuasiveness of the medical opinions in the record. Doc. 7-3 at 35. The ALJ found the prior administrative opinion of state consultant Dr. Robert Estock—finding no severe mental impairment—to be "generally" persuasive and supported by the record, but found that "based on the claimant's records received since this review there is evidence of treatment for mental health issues," so "to extend every reasonable benefit of the doubt to the claimant" the ALJ "considered his mental impairments severe and included conforming mental health limitations in the residual functional capacity." Doc. 7-3 at 35.

The ALJ found the statement from Hames's therapist Karen Marks to be "overall" persuasive, as she noted limitations that, "at most, would moderately affect the claimant's ability to perform work-like activities." Doc. 7-3 at 34–35. The ALJ found that Marks's statement was consistent with Hames's subjective complaints and was not inconsistent with Hames's current treatment. Doc. 7-3 at 36.

The ALJ found that, "when fully considering the claimant's subjective allegations in light of the opinion evidence, clinical findings, and course of treatment," Hames "could successfully perform work activity within the parameters of a range of light work activity as assigned in" the RFC determination.  Doc. 7-3 at 36.

The ALJ found that Hames was unable to perform any of his past relevant work.  Doc. 7-3 at 36.

At step five, after considering Hames's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Hames could perform.  Doc. 7-3 at 36–37.  The ALJ relied on the testimony of the VE and found that Hames would be able to perform the requirements of representative occupations such as cafeteria attendant, folder, and sorter.  Doc. 7-3 at 37.  Consequently, the ALJ found that Hames was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and as a result had not "been under a disability, as defined in the Social Security Act, from November 26, 2018, through the date of this decision."  Doc. 7-3 at 37–38.

### 4.    Appeals Council decision

On March 10, 2023, Hames appealed the ALJ's decision to the Appeals Council.  Doc. 7-6 at 10–12; Doc. 7-11 at 2–4.

On August 9, 2023, the Appeals Council denied Hames's request for review of the ALJ's January 24, 2023 decision, finding no reason to review the ALJ's decision. Doc. 7-3 at 2–6. Because the Appeals Council found no reason to review the ALJ's decision, the ALJ's decision became the final decision of the Commissioner. *See* 42 U.S.C. § 405(g).

## DISCUSSION

Having carefully considered the record and briefing, the court must reverse and remand because—under the controlling Eleventh Circuit caselaw—the court cannot determine that the ALJ's decision was supported by substantial evidence. The ALJ found that Hames has severe mental impairments and a moderate limitation with regard to concentrating, persisting, or maintaining pace (at steps two and three), but the ALJ did not address that moderate limitation—one way or the other—in assessing Hames's RFC (at step four), and then asked the VE a hypothetical question that did not include or otherwise implicitly account for that moderate limitation.

In evaluating a claimant's mental impairments, an ALJ must apply a special technique in which the ALJ evaluates the claimant's degree of functional limitation in a number of areas, including the claimant's ability to maintain concentration, persistence, or pace. *See Moore,* 405 F.3d at 1213–14; 20 C.F.R. §§ 404.1520a(a), (c)(3)–(4), 416.920a(a), (c)(3)–(4). The ALJ is required to incorporate the results of the special technique into the ALJ's findings and conclusions. *See Moore*, 405 F.3d

at 1213–14.

This technique, however, is separate from the ALJ's evaluation of the claimant's RFC, the latter of which is an assessment of the claimant's ability to do work despite his impairments. *See Winschel*, 631 F.3d at 1180; *Lewis*, 125 F.3d at 1440; 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1).

As explained above, at step five of the required sequential evaluation, after assessing a claimant's RFC (at step four), an ALJ must determine whether a significant number of jobs exist in the national economy that the claimant can perform. *See Winschel*, 631 F.3d at 1180. The ALJ may make this determination by applying the Medical Vocational Guidelines, or by utilizing the testimony of a vocational expert. *Id.* "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.*

In this case (at step two), the ALJ found that Hames had severe impairments, including the severe mental impairments of "depressive disorder/schizoaffective disorder; anxiety disorder; and attention deficit/hyperactivity disorder (ADHD)." Doc. 7-3 at 27.

At step three, the ALJ applied the special technique for evaluating mental impairments (*see Moore,* 405 F.3d at 1213–14), and found that Hames had a moderate limitation in concentrating, persisting, or maintaining pace—in part based

21

on Hames's testimony that he had difficulty concentrating.  Doc. 7-3 at 29 ("With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation.").[1]

The ALJ then specifically noted that his analysis was not a mental RFC assessment, which required "a more detailed assessment of the areas of mental functioning."  Doc. 7-3 at 29 ("The limitations identified . . . are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning."); *see Winschel*, 631 F.3d at 1180; *Lewis*, 125 F.3d at 1440.

But the Eleventh Circuit has reasoned that, while an ALJ's analysis of mental impairments and limitations at steps 2 and 3 of the sequential analysis "is distinct from the more detailed inquiry as to a claimant's RFC at step four," the ALJ "is still

---

[1] "In his function report, the claimant did not indicate difficulty with concentration.  He wrote he is able to pay attention for an hour or two and indicated that he completes what he starts (Exhibit 6E).  At the hearing, the claimant endorsed difficulty with concentration and inability to finish what he starts (Hearing testimony).  While the record documents the claimant has endorsed difficulty with concentration, there is no objective documentation of difficulty with attention or concentration outside of his initial hospitalization following the motor vehicle accident.  The claimant's therapist indicated the claimant would have mild impairment carry[ing] out simple instructions and moderate impairment carrying out complex instructions (Exhibit 10F)."  Doc. 7-3 at 29.

required to account for a claimant's moderate limitation in the area of concentration, persistence, or pace in a hypothetical posed to the VE." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1325 (11th Cir. 2021) (citing *Winschel*, 631 F.3d at 1180–81).

In *Winschel*, the Eleventh Circuit held that "a hypothetical question to a vocational expert must specifically account for limitations in concentration, persistence, and pace identified during the Psychiatric Review Technique ('PRT')," and rejected the Commissioner's argument that "to include such limitations in a hypothetical question would inappropriately conflate independent inquiries—the PRT, at steps two and three, and the RFC, at step four." 631 F.3d at 1180.

The Eleventh Circuit in *Winschel* reasoned that, as in this case, "the ALJ determined at step two that [the claimant's] mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace," but "the ALJ did not indicate that medical evidence suggested [the claimant's] ability to work was unaffected by this limitation, nor did [the ALJ] otherwise implicitly account for the limitation in the hypothetical," and consequently "the ALJ should have explicitly included the limitation in [the] hypothetical question to the vocational expert." 631 F.3d at 1181.

In this case, at step four, the ALJ went on to find Hames's RFC. Doc. 7-3 at 30–36.

The only mental limitations in the ALJ's RFC finding were that Hames "would be able to understand, remember and carry out simple instructions and tasks," could "tolerate changes in the workplace that are infrequent and gradually introduced," and could "have occasional work-related interaction with supervisors, coworkers and the general public." Doc. 7-3 at 30.

None of these limitations appears to account for Hames's difficulty—and the moderate limitation that the ALJ found at step three—in concentrating, persisting, or maintaining pace.

Moreover, in explaining the RFC determination, the ALJ noted Hames's testimony that he could not concentrate or finish things and his medical records indicating trouble concentrating, but did not explain why the ALJ did not account for those symptoms in the RFC. Doc. 7-3 at 30–34.[2]

The ALJ also found Karen Marks's medical source statement—which included a note that Hames had trouble staying on topic—as "overall" persuasive and consistent with Hames's subjective complaints, which included an inability to

---

[2] *See, e.g.*, Doc. 7-3 at 31 ("The claimant stated he is unable to do any type of job because he cannot be relied upon. He stated he thought he would be absent from work one to two days a week due to pain. He reported he also has difficulty with concentration due to anxiety and is unable to retain anything."); Doc. 7-3 at 33 ("Primary care treatment notes document the claimant was prescribed medication for his psychological symptoms and had been referred to psychiatry for further evaluation on multiple occasions but did not establish with psychiatry on a consistent basis until December 2021, at which time he endorsed difficulty with motivation and concentration, as well as issues with his image associated with weight gain.").

concentrate.  Doc. 7-3 at 36.

Thus, the ALJ did not include an assessment or explanation in the RFC determination of the impact of Hames's moderate limitation in concentrating, persisting, or maintaining pace.  And the ALJ did not include Hames's moderate limitation in concentrating, persisting, or maintaining pace in the hypothetical posed to the VE.

As discussed above, an ALJ's mental RFC determination is different from the ALJ's assessment of mental impairments and limitations, but the ALJ "is still required to account for a claimant's moderate limitation in the area of concentration, persistence, or pace in a hypothetical posed to the VE." *Buckwalter*, 5 F.4th at 1325 (citing *Winschel*, 631 F.3d at 1180–81).

Here, with respect to mental impairments, the ALJ's hypothetical to the VE included only the following limitations:  that the individual "would only be able to understand, remember and carry out simple instructions and tasks, the person could tolerate changes in the workplace that are infrequent and gradually introduced and this individual could have occasionally work-related interaction with supervisors, coworkers, and the general public."  Doc. 7-3 at 66.  Those hypothetical limitations do not have any apparent element to account for Hames's moderate limitation in concentrating, persisting, or maintaining pace.  And (as discussed above), the ALJ's RFC analysis does not say why—or even whether—that moderate limitation may

25

have been excluded from the RFC determination and/or the hypothetical posed to the VE. Consequently, this court cannot conclude that substantial evidence supports the ALJ's decision.

Indeed, the VE agreed with Hames's counsel that, if the hypothetical individual as posed by the ALJ "had an inability to maintain concentration, persistence and pace for two hours," then "that would eliminate th[e] [available] jobs" for the hypothetical individual (at step five). Doc. 7-3 at 68.

As a result, the ALJ's hypothetical in this case was not sufficient. In *Winschel*, the Eleventh Circuit reasoned that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 631 F.3d at 1180. Instead, the hypothetical question posed to the VE must "include or otherwise implicitly account for all of [a claimant's] impairments"—including those in "concentration, persistence, or pace"—for the VE's answer to constitute substantial evidence. *Id.* at 1181.

The ALJ did not explicitly account for Hames's moderate limitation in concentrating, persisting, or maintaining pace in the hypothetical posed to the VE; nor did the ALJ explicitly address in the RFC determination Hames's moderate limitation in concentrating, persisting, or maintaining pace. *See Winschel*, 631 F.3d at 1180–81 (where the ALJ found "at step two that [the claimant's] mental

impairments caused a moderate limitation in maintaining concentration, persistence, and pace," the ALJ was required to either "indicate that medical evidence suggested [the claimant's] ability to work was unaffected by this limitation," or "otherwise implicitly account for the limitation in the hypothetical" posed to the VE). And, to the extent that the ALJ arguably may have implicitly accounted for Hames's moderate limitation in concentrating, persisting, or maintaining pace in the hypothetical posed to the VE or in the RFC determination, this court cannot say where; and the court cannot "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted).

In fact, the record does contain evidence that could support a finding that Hames suffered from depression, anxiety, and ADHD and had limitations in concentration and maintaining pace—including multiple complaints of being unable to concentrate, being unable to focus, and being unable to finish what he started. But it appears that the ALJ provided no explanation for how the moderate limitation that the ALJ found at step three nevertheless was excluded in the RFC determination at step four. *See* Doc. 7-3 at 56–57; Doc. 7-10 at 33; Doc. 7-12 at 9–10; Doc. 7-15 at 2, 15, 27; Doc. 7-17 at 21–22, 29–30; Doc. 7-18 at 10, 27, 38–39; Doc. 7-19 at 6; Doc. 7-21 at 3.

Illustratively, the court's conclusion is confirmed by a comparison between

the ALJ's hypothetical in this case and those posed in some unpublished cases in which the Eleventh Circuit has held that the hypothetical questions to the VE adequately accounted for moderate limitations in concentrating, persisting, or maintaining pace—where the ALJ addressed that limitation as part of the RFC analysis, and/or where the ALJ did not explicitly include that limitation in the hypothetical. For example, the Eleventh Circuit has held that an ALJ adequately accounted for moderate limitation in concentration, persistence, or pace in the following circumstances: where the ALJ explicitly found that, even with the limitation, the claimant could concentrate sufficiently for two hours to perform basic activities (*see Thornton v. Commissioner, Soc. Sec. Admin.*, 597 F. App'x 604, 612 (11th Cir. 2015)); where the ALJ "determined that the medical evidence demonstrated that [the claimant] could engage in simple tasks, despite moderate limitation in concentration, persistence, and pace," and then limited the hypothetical to simple tasks (*see Neefe v. Commissioner of Soc. Sec.*, 531 F. App'x 1006, 1007 (11th Cir. 2013)); where the ALJ included in the hypothetical to the VE that the claimant was limited "to one to three step non-complex tasks" (*see Jacobs v. Commissioner of Soc. Sec.*, 520 F. App'x 948, 951 (11th Cir. 2013)); and where the question to the VE included a stipulation that the hypothetical individual could only "concentrate for brief periods of time" (*see Jarrett v. Commissioner of Soc. Sec.*, 422 F. App'x 869, 871 (11th Cir. 2011)). *Accord Winschel*, 631 F.3d at 1180–81.

In each of those cases, there was some recognition either that the moderate limitation in concentrating, persisting, or maintaining pace did not substantially affect the claimant's ability to perform tasks at the level contemplated in the RFC, or that the claimant's work tasks needed to be limited in both complexity and time. But, in this case, the ALJ included no such finding as part of the RFC determination, and no such limitation in the hypothetical posed to the VE. Again (as discussed above), when Hames's counsel asked the VE if it would eliminate the available jobs for the hypothetical individual if the individual "had an inability to maintain concentration, persistence and pace for two hours," the VE responded that it would. Doc. 7-3 at 68. So, practically speaking, the court cannot conclude that substantial evidence supports the ALJ's decision because the court cannot say how the ALJ or the VE accounted—or would have accounted—for Hames's moderate limitation in concentrating, persisting, or maintaining pace.

Relying on the finding of Hames's RFC and the testimony of the VE, the ALJ found that a significant number of jobs existed in the national economy that Hames could perform. Doc. 7-3 at 36–38. On remand, it may be that the Commissioner reaches the same conclusion, and it may be that substantial evidence would support that same conclusion. But because neither the ALJ's RFC determination nor the ALJ's hypothetical question to the VE accounted explicitly (or, so far as the court can tell, implicitly) for all of Hames's impairments—i.e., Hames's moderate

limitation in concentrating, persisting, or maintaining pace—the VE's testimony is not substantial evidence; and the court cannot say that substantial evidence supports the ALJ's conclusion that Hames could perform a significant number of jobs in the national economy, as was required for the Commissioner to find that he was not disabled. *See Winschel*, 631 F.3d at 1180–81. The Commissioner must address and resolve this issue on remand.

## CONCLUSION

For the reasons stated above (and pursuant to 42 U.S.C. § 405(g)), the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this memorandum opinion. The court separately will enter final judgment.

**DONE** and **ORDERED** this March 3, 2025.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE